[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter involves a motion to revoke the commitments of the above-referenced children, which was filed by their mother, Yolanda C. The case also involves a motion by the Department of Children and Families (DCF) for permission to place the children with relatives in Nevada.
Both motions were heard simultaneously at a contested evidentiary hearing which was held on April 14, 1999 and April 16, 1999. The court has carefully considered all of the evidence and testimony presented at the hearing. CT Page 6303
 FACTUAL FINDINGS
Alexander, Lourdes and Anita were initially committed to DCF's care and custody as neglected children on December 9, 1996. These commitments were extended on December 9, 1997 and on December 9, 1998. The children have been in foster care continuously since DCF received orders for their temporary custody approximately three years ago.
The underlying reasons for the children's commitments were Yolanda C.'s chronic substance abuse, and the neglectful circumstances which each child experienced as a result of that drug use.
Yolanda C. testified at hearing that she had not used illegal drugs for 22 months prior to June 1998. She admitted during her testimony that she had relapsed last June by using cocaine once. The respondent introduced no other evidence — such as drug test results or other medical records — which substantiated her claim that she had remained drug-free for nearly two years. There was countervailing evidence that Yolanda C. failed to complete substance abuse treatment at the "Hogar Crea" programs in Pennsylvania and Connecticut, and was not cooperative with several DCF requests for drug tests, during this period of time. (State's Exhibit D, P. 3). The court does not accept the respondent's claim that she abstained from illegal drugs for nearly two years prior to June 1998.
On June 16, 1998, Yolanda C. tested positive for cocaine. (State's Exhibit E, P. 2). Around that time, the respondent admitted that she had relapsed by using cocaine sometime in March 1998. (State's Exhibit 2, P. 2)
DCF requested that Yolanda C. submit to subsequent drug analysis. The respondent failed to appear for a drug test which had been scheduled by DCF on August 4, 1998. She kept an appointment for a hair test on August 14, 1998 but — through no fault of the respondent — the sample taken was insufficient for proper analysis. (State's Exhibit E, P. 3).
Another sample of Yolanda C.'s hair was analyzed for illegal drugs on September 10, 1998. A "segmented" testing procedure revealed that the respondent used cocaine during the periods of June 10, 1998-July 10, 1998, and July 10, 1998-August 10, 1998. CT Page 6304 This test indicated that Yolanda C. did not take illegal drugs during the subsequent period of August 10, 1998-September 10, 1998. (State's Exhibit E, P. 3).
The court accepts the evidence of these test results as fact. This proof controverts Yolanda C.'s claim at hearing that she had only used cocaine once, in June 1998. The court finds that the respondent mother abused cocaine on more than one occasion. This occurred in March 1998, and during the two periods referred to above when the hair testing results were positive for cocaine.
Yolanda C. voluntarily entered a drug treatment program at the Blue Ridge Center in Bloomfield on November 9, 1998. (Mother's Exhibit 2). She was successfully discharged from this program on December 11, 1998. (Mother's Exhibit 2). The respondent has been involved in continuing care at Blue Ridge since that time, and her attitude and participation have been positive. (Mother's Exhibits 2, 6, 8, 9, 10 and 11). Based on the favorable letters from Blue Ridge, the court finds that Yolanda C. has been actively involved in substance abuse therapy for the past six months and has demonstrated commitment to this therapy.
The respondent introduced the results of several drug tests in an effort to prove that she has remained drug-free since June 1998. (Mother's Exhibits 3, 4, 5, 8, 12 and 13). All were negative for cocaine. However, drug screens administered on February 19, 1999, March 13, 1999 and March 26, 1999 indicated that Yolanda C. tested positive for benzodiazepine. (Mother's Exhibits 4, 5 and 13). Benzodiazepine is a mood-altering drug which is found in mild sedatives, such as Valium.
Yolanda C. attributed these positive tests to a muscle relaxant, flexeril, which had been prescribed after she sustained a shoulder injury at work. (Testimony of Yolanda C. and Mother's Exhibits 7A, 7B and 7C). The respondent introduced a prescription for flexeril dated March 15, 1999. (Mother's Exhibit 7A). She also submitted a letter from Karen Gardner, her substance abuse counselor at Blue Ridge. (Mother's Exhibit 12). In that letter, Ms. Gardner wrote:
"All results showed positive for Benzodiazepines only. Yolanda explained that this was a medication that was prescribed for her. The medication is flexeril, and I confirmed with our medical staff that it would show in the urine as Benzodiazepine." (Mother's Exhibit 12). CT Page 6305
DCF disputed the mother's explanation concerning the three tests which were positive for benzodiazepine. Julie Sinkiewicz, a certified drug and alcohol counselor employed by the agency, reviewed a listing of the prescription medications taken by the respondent Ms. Sinkiewicz testified that inquiries which she made led her to the conclusion that the flexeril and other prescribed medicines taken by Yolanda C. would not result in tests which were positive for benzodiazepine. She said that those test results were cause for concern that Yolanda C. had relapsed during February and March 1999.
The court does not accept the testimony or evidence from either drug counselor as dispositive on the issue of what caused the mother's positive screens for benzodiazepines.
During the hearing, neither party offered sworn testimony on this issue from an expert, such as a pharmacist or physician. (DCF attempted to introduce a letter from a pharmacist who was not present at court, and the offer was excluded when the court sustained the respondent's hearsay objection.) The absence of testimony from a qualified expert on this crucial issue of disputed fact was extremely unfortunate. It prevented the court from determining whether the benzodiazepine found in the respondent's system came from lawfully prescribed medicines, or from illegal drug use.
Yolanda C. introduced credible evidence at hearing that she leased an apartment on March 1, 1999. (Mother's Exhibit 1). The respondent also proved that she has secured gainful employment as a nurse's aid and, as noted above, that she has been actively pursuing substance abuse treatment for the past six months.
Ms. Sinkiewicz, the DCF substance abuse counselor, testified at hearing that Yolanda C. appeared to be doing well in her recent rehabilitative efforts. However, the drug counselor also opined that a patient's ability to remain clean and sober for a period of time "one to two years" in length is a good indicator of successful recovery. The court accepts these observations and opinions as fact.
At the outset of this proceeding, all the parties stipulated in writing that the three children love their mother, and wish to reside with her. The court accepts these facts as proven at hearing. CT Page 6306
Alexander, Lourdes and Anita have resided for approximately three years in the home of their maternal grandparents, Juana C. and Casildo C. DCF placed the children there around the time it received temporary custody of the children. During the past year, Alexander has engaged in seriously disruptive behavior, both at school, and in his grandparent's home. He was expelled from school for bringing a BB gun there. Starting five or six months ago, the grandparents began asking DCF to place Alexander, who is 13 years old, out of their home.
DCF has investigated the possibility of placing all three children with a maternal aunt, Lourdes S., and her husband, Leroy S., in North Las Vegas, Nevada. The Nevada Division of Child and Family Services has investigated this home and found it to be a suitable placement. (State's Exhibit A).
 ADJUDICATION
The party seeking revocation of a commitment has the burden of proving by a fair preponderance of the evidence that no cause for commitment exists. If that burden is met, the opposing party then has the burden of proving by a fair preponderance of the evidence that revocation of commitment would not be in the child's best interests. (C.P.B. 33-10).
The court recognizes that Yolanda C. has undertaken significant rehabilitative steps during the past six months. She has obtained housing and employment and has been actively involved in therapy at Blue Ridge. The respondent undertook these efforts on her own, and without substantial assistance from DCF, since the court had previously ruled that further efforts to reunite the mother with the children were no longer appropriate. All three children have expressed the strong desire to live with their mother.
The court has considered the forgoing, but does not find that Yolanda C. has proven by a fair preponderance of the evidence that no cause for commitment currently exists.
Yolanda C., who is 40 years old, has had chronic substance abuse problems since she was 18. Alexander, Lourdes and Anita were neglected, and have spent the past three years in foster care, as a direct result of their mother's drug use. The oldest child, Alexander, has behavioral problems which are so severe CT Page 6307 that he has been expelled from school, and can no longer be maintained in his grandparent's home.
This court has found that Yolanda C. abused cocaine on more than one occasion during the period of time between March 1998 and August 10, 1998. She failed to attend a drug test which DCF scheduled on August 4, 1998. Her treatment at Blue Ridge began only six months ago. These facts compel the court to find that the respondent's recovery is still in its early stages, and that it would be premature to return the three children — and especially Alexander, who has been engaging in serious misbehavior — to the respondent's care and custody at this time. To do so before Yolanda C.'s recovery was more advanced would create a substantial risk of harm to the children's well-being. The court finds that cause for commitment still exists. The motion for revocation of the commitments is hereby DENIED.
At a minimum, this court would expect Yolanda C. to satisfactorily complete at least one full year of drug treatment, and to consistently render negative drug tests for another six months, before the children are reunited with her.
It is apparent to the court that Alexander can no longer remain with his grandparents, and that there is a pressing need to remove him from that foster home. DCF recommends that Alexander, Lourdes and Anita be placed together. The relatives in Nevada are willing to assume custody of all three children, and the Nevada authorities have approved this placement.[1] Under the totality of all the circumstances in this case, the court finds, based upon a preponderance of the evidence, that placement with the maternal aunt and her husband in Nevada is in the best interest of each child. Subject to the orders set forth below, DCF's motion for approval of out-of-state placement is herebyGRANTED.
Having heard and considered all of the evidence presented at this contested hearing, the court finds that the following orders are necessary for the well-being of Alexander, Lourdes and Anita. Accordingly, pursuant to the provisions of C.G.S. 46b-121, the court issues these orders:
1. Alexander, who has been expelled from school, may be immediately placed in Nevada This order is contingent upon confirmation that the proposed caretakers have, in fact, relocated to their own home, and that these premises are CT Page 6308 suitable.
2. Lourdes and Anita may be placed with the relatives in Nevada upon completion of the current academic year at school in June. This order is also contingent upon confirmation of their relative's relocation.
3. Despite the prior finding by the court that relocation efforts are no longer appropriate, this court finds that Yolanda C has made substantial efforts to rehabilitate during the past year and is motivated to reunite with her children. The children love their mother and wish to live with her. Accordingly, based upon a preponderance of the evidence, the court finds that further efforts to reunify Yolanda C. with the children are appropriate. DCF is ordered to periodically test the respondent for illegal drugs, including benzodiazepines, on a random basis. The method and location of said tests (which will be conducted at least twice monthly) shall be at the discretion of DCF. Yolanda C. is ordered to fully cooperate with said testing, and also to provide DCF, on an ongoing basis, with a listing of all prescribed medications which she is taking, and the name and address of the health care provider who prescribed same.
4. DCF shall facilitate visitation between the mother and the three children. In the event that Yolanda C. does not relocate to Nevada, DCF shall assume the costs of transporting the mother to visits with the children in Nevada on a semiannual basis, commencing with a visit near Christmas in December 1999.
5. The respondent is ordered to participate in ongoing substance abuse therapy, maintain adequate housing and a legal source of income, refrain from the use or possession of illegal drugs or controlled substances of any kind, avoid violations of state, federal or local law, keep her whereabouts known to DCF, her counsel and the attorney for the children, and sign all required releases authorizing DCF to communicate directly with all service providers, including the respondent's physicians, mental health therapists, and substance abuse treatment providers, for the purpose of monitoring compliance with these orders.
SO ORDERED.
Dated at Hartford, Connecticut this 5th day of May, 1999. CT Page 6309
Dyer, J.